**E-Filed on:** 11/13/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAN THI DOAN; VAN MAN NGUYEN, individually and d/b/a El Coyote Mexican Grill, <br><br> Defendants. | No. C-08-00324 RMW <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT <br><br> **[Re Docket No. 16]** |

Plaintiff J & J Sports Productions, Inc. ("J & J") moves for default judgment against the defendants Man Thi Doan and Van Man Nguyen. The court has considered the papers submitted in support of the motion. For the reasons set forth below, the court grants J & J's motion for default judgment.

## I. BACKGROUND

### A. J & J Sports Productions

J & J licenses the right to broadcast closed-circuit sports and entertainment programming in commercial establishments. Docket No. 17, Decl. of Joseph M. Gagliardi ("Gagliardi Decl.") ¶3. J & J then sub-licenses this right to the company's commercial customers, which consist of

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-00324 RMW
LL

establishments such as casinos, racetracks, bars, restaurants, and nightclubs. *Id.* The program relevant to this case is the prizefight broadcasted on January 21, 2006 and marketed as "'The Battle': Erik Morales v. Manny Pacquiao II, WBC International Super Featherweight Championship Fight Program." ("The Battle") Compl. ¶ 10.[1] J & J's president, Joseph M. Gagliardi, has observed an erosion in his company's sales, due in large part to signal piracy of broadcasts by unauthorized and unlicensed establishments. Gagliardi Decl. ¶¶ 1, 4, 8. Mr. Gagliardi believes that signal piracy has cost his company several million dollars in revenue. *Id.* ¶ 10. Accordingly, J & J incurs a "considerable expense" to discover, identify, and prosecute signal pirates. *Id.* ¶ 6.

### B. Mr. Doan, Mr. Nguyen, and King Pizza

J & J filed its complaint against Mr. Doan and Mr. Nguyen on January 17, 2008. As alleged, Messrs. Doan and Nguyen are each "an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or individual with dominion, control, oversight and management of the commercial establishment doing business as King Pizza operating at 1632 Story Road, San Jose, California 95122." Compl. ¶¶ 7, 8. According to public records, however, Messrs. Doan and Nguyen no longer operate King Pizza. The California Department of Alcoholic Beverage Control maintains public records regarding its licenses to serve alcohol. *See* California ABC - License Query System, http://www.abc.ca.gov/datport/LQSMenu.html; *see also* Fed. R. Evid. 201(b)-(c). At the time of the prizefight broadcast, King Pizza was operated by Man Thi Doan (the primary owner) and Van Man Nguyen. *See* License No. 403880. But on December 21, 2006, Messrs. Doan's and Nguyen's alcohol license was transferred to Thao Minh Thi Nguyen. *Id.*; *see* License No. 448962. Since December 22, 2006, King Pizza has been operated by Thao Minh Thi Nguyen. *See* License No. 448962. Nonetheless, the record is clear that Messrs. Doan and Nguyen did operate the King Pizza at the time in question.

The Battle was broadcasted on January 21, 2006. Compl. ¶ 10. Messrs. Doan and Nguyen did not have a license from J & J to publically exhibit the fight at King Pizza, but nonetheless did.

---

[1] J & J alleged that it owns the "exclusive nationwide television distribution rights" to the fight. Compl. ¶ 10. Mr. Gagliardi's declaration clarifies that J & J owns the "commercial exhibition licensing rights" to the fight. *Id.* ¶ 3; Gagliardi Decl. ¶ 3. It appears that HBO owns the rights to provide the fight to residential customers.

*Id.* ¶ 13. Details about that night come from the declaration of Anthony Dazhan. *See* Docket No. 16-3. Mr. Dazhan entered King Pizza at approximately 7:25 p.m. on January 21, 2006. Docket No. 16-3. He observed on two television sets a boxing match between Martin Castillo and Alexander Munoz with Castillo wearing "red w/white trunks" and Munoz wearing "red w/black trunks."[2] *Id.* The fight was at the beginning of the first round with both boxers beginning to spar. *Id.*

While in King Pizza, Mr. Dazhan observed that it could hold approximately 50 people, but counted about 30 people in the restaurant. *Id.* He testified that a cable box was not visible and that the establishment did not have a satellite dish. *Id.* Further, he stated that there were no apartments above or adjacent to King Pizza. *Id.* Mr. Dazhan left at approximately 7:30 p.m. and swore out a declaration eleven days later on February 2, 2006. *Id.*

## II. ANALYSIS

J & J filed a form brief in support of its application for default judgment, requesting $50,000 in statutory damages for violating 47 U.S.C. § 553(b)(2) and (c)(2)(c) and $50,000 in statutory damages for violating 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii). J & J also requests $800 for Messrs. Doan's and Nguyen's conversion of its programming. This court has previously heard similar cases asserted by J & J. *See J & J Sports Prods., Inc. v. Manzano*, No. C-08-01872 RMW, 2008 WL 4542962 (N.D. Cal. Sept. 29, 2008) (order granting motion for default judgment). Accordingly, the court examines *Manzano* for guidance and incorporates the legal analysis presented there on 47 U.S.C. §§ 553, 605, and Conversion into the present action.

**A.     Counts I and II – Violation of 47 U.S.C. § 553 and 47 U.S.C. § 605**

Because section 553 is the more specific provision at issue, the court begins its analysis with the second count of J & J's complaints. Section 553(a)(1) prohibits a person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system." In other words, section (a)(1) prohibits both illegally receiving cable programming and helping others to illegally receive cable programming by manufacturing or distributing

---

[2] In addition to the bout between Morales and Pacquiao, the Battle includes all undercard bouts and fight commentary encompassed in the broadcast. Compl. ¶ 10. The bout between Martin Castillo and Alexander Munoz was included on the undercard of the Morales-Pacquiao fight. Gagliardi Decl. ¶ 7.

equipment that allows a person to receive cable programming without authorization. *See* 47 U.S.C. § 553(a)(2). For any violation of section 553(a)(1), be it unauthorized interception or manufacturing or distributing equipment to assist in intercepting cable programming, the maximum statutory damage award for a willful violation "for purpose of commercial advantage or private financial gain" is $50,000. 47 U.S.C. § 553(b)(2). As a preliminary matter, the court rejects J & J's argument that the airing of the fight qualifies for the statutory maximum of damages. Nothing about Messrs. Doan's and Nguyen's conduct is nearly as egregious as the manufacture and distribution of equipment for intercepting cable programming, which might qualify for the maximum statutory damage award.

      J & J also seeks to recover pursuant to section 605, which prohibits interception of "radio" communications. 47 U.S.C. § 605(a).[3] Pursuant to the law, J & J may recover a statutory damages award of "not less than $1,000 or more than $10,000," and the award may be increased by up to $100,000 if the violation was for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(i)(II)-(ii). Despite the broad phrasing of section 605 (which dates back to 1934), it is not coextensive with section 553. *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996). As explained in a thorough opinion by the Seventh Circuit, "cable television programming transmitted over a cable network is not a 'radio communication'" under section 605. *Id.* at 469; *see also TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001) (endorsing *Norris* and further explaining the distinction between sections 553 and 605). A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception.

      As mentioned, J & J seeks the maximum statutory damages for violation of both sections 553 and 605. J & J's cites various unpublished cases to support its entitlement to damages under both. The cases are not persuasive. The only one cited by J & J awarding damages (as opposed to finding violations) under both statutes did not consider the interplay between the two statutes and did not

---

[3] Section 605(a) has four clauses. Clauses two, three and four prohibit only conduct related to "radio communications." The first clause prohibits activity with respect to both "radio" and "wire" communications. However, it only "prohibits the divulging of wire or radio transmissions by communications personnel." *United States v. Norris*, 88 F.3d 462, 465 (7th Cir. 1996).

make a finding regarding how the piracy was accomplished, noting only that the defendant "professed not to know." *Spencer Promotions, Inc. v. 5th Quarter Enterprises Inc*, 1996 WL 438789, *3 (N.D. Cal. Feb. 21, 1996).

The court is unpersuaded that Messrs. Doan and Nguyen violated both sections 553 and 605. Although the investigator, Mr. Dazhan, witnessed the fight being shown on two televisions, there is no evidence the programming was received simultaneously from both a cable signal and a satellite broadcast. In his declaration, Mr. Dazhan stated that a cable box was not visible and the restaurant did not have a satellite dish. Because of the prominent placement required for a satellite dish in comparison to the ease that a cable box can be hidden, the court finds Mr. Dazhan's testimony persuasive evidence that the programming came from a cable signal. Accordingly, the court finds Messrs. Doan and Nguyen violated section 553 but not section 605.[4]

### B. Count III – Conversion

J & J's papers make no explanation for why it is entitled to damages for conversion of its programming on top of the violation of federal law. J & J does not explain the basis for requesting $800. Perhaps J & J is entitled to the amount of the pay-per-view fee for the programming that Messrs. Doan and Nguyen broadcast, but that amount is not included in the papers. The court therefore declines to award any damages on the conversion claim because J & J has produced no evidence to support its requested damages.

### C. The Amount of Damages for the Section 553 Violation

J & J submits that "*the most* important factor in assessing damages is the deterrent effect of the award." The court agrees. And accordingly, the court begins its analysis with the minimum statutory damage award of $250. *See* 47 U.S.C. § 553(c)(3)(A)(ii). J & J's form allegations to the contrary, judicially noticeable public records indicate that Messrs. Doan and Nguyen no longer operate the facility where the piracy occurred. Thus, a hefty statutory damages award will not deter future violations by Mr. Doan or Mr. Nguyen.

---

[4] To be sure, the court must accept as true the complaint's allegations upon entry of default. But J & J's complaint does not allege *how* Messrs. Doan and Nguyen aired the program, only that they did so without authorization. *See* Compl. ¶ 13.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-00324 RMW
LL          5

Section 553(c)(3)(A)(ii) further instructs the court to award "a sum of not less than $250 or more than $10,000 as the court considers just." Furthermore, "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C. § 553(c)(3)(C). Since neither Mr. Doan nor Mr. Nguyen have testified that they were unaware and had no reasons to believe their acts violated the law, the court declines to exercise its discretion to reduce the damages award to less than $250.

J & J's business depends on commercial establishments respecting the law, and those establishments have a duty to conform their behavior to the law before being threatened with litigation. J & J has introduced evidence to suggest that there were approximately 30 patrons in attendance and two televisions showing the fights. Thus, there is some evidence of a clearly commercial purpose for showing the fight. A damage award would thus have a deterrent effect on such unauthorized conduct. The court therefore finds that an award of $2500 is just.

### III.  ORDER

For the foregoing reasons, the court grants J & J's motion for default judgment. Judgment shall be entered in favor of J & J in the amount of $2500 in damages jointly and severally against Messrs. Doan and Nguyen.

DATED:     11/13/08

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-00324 RMW
LL                                                                          6

1  **Notice of this document has been sent to:**

2  **Counsel for Plaintiff:**

3  Thomas P. Riley             tprlaw@att.net

4  **Defendants:**

5  (no contact information)

6

7  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

9
10  **Dated:**     11/13/08                          **JAS**
                                                      **Chambers of Judge Whyte**

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-00324 RMW
LL                                               7